No. 25-2467

IN THE
UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

| | |
|---|---|
| SAFARI CHILDCARE, INC. and JAMES OURTH, <br><br> Plaintiffs-Appellants, <br><br> v. <br><br> SHIRLEY PENNY, DENICE MURRAY, CAROL MORRIS, RICHARD ALEXANDER, JOEL LAMZ, STANY D'SOUZA, EDIE WASHINGTON-GURLEY, JOSE ALEX MEDINA, FRANK NEUMAN, HELEN CROSS, BETH GIRARDIER, MARY LIVORSI, LESLIE PARELLO-HORTON, JODI GOLEMBIEWSKI, JODINE WILLIAMS, EVA CAMACHO, ROBERT MUSIAL, DONNA RIEDL, GWENDOLYN AMBER, COURTNEY MARSHALL, STACY SMITH, GAIL WILLIAMS, and SHERRYE HAMPTON, <br><br> Defendants-Appellees. | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division <br><br><br><br><br><br> No. 1:17-cv-08547 <br><br><br><br><br><br><br><br><br><br> The Honorable MARY M. ROWLAND, Judge Presiding. |

**BRIEF OF DEFENDANTS-APPELLEES**

**KWAME RAOUL**
Attorney General
State of Illinois

**JANE ELINOR NOTZ**
Solicitor General

**R. SAM HORAN**
Assistant Attorney General
115 South LaSalle Street
Chicago, Illinois 60603
(312) 793-0797 (office)
(312) 405-5354 (cell)
Richard.Horan@ilag.gov

115 South LaSalle Street
Chicago, Illinois 60603
(312) 814-3000

Attorneys for Defendants-Appellees

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES................................................................................................iii

JURISDICTIONAL STATEMENT....................................................................................1

ISSUES PRESENTED FOR REVIEW .............................................................................3

STATEMENT OF THE CASE ...........................................................................................4

Statutory and Regulatory Background...............................................................................4

Safari's Licensing History .................................................................................................6

Procedural History .............................................................................................................8

SUMMARY OF ARGUMENT .........................................................................................13

ARGUMENT .....................................................................................................................15

I.     This court reviews the grant of summary judgment *de novo*. ...........................15

II.    The district court properly granted summary judgment on plaintiffs'
       equal protection claims.......................................................................................16

       A.     Plaintiffs have waived their equal protection arguments in
              multiple independent ways.........................................................................16

              1.     Plaintiffs cannot rely on their improper Rule 56.1
                     submissions. ......................................................................................17

              2.     Plaintiffs failed to raise their arguments in the district
                     court. ..................................................................................................21

              3.     Plaintiffs waived their arguments through inadequate
                     appellate briefing. .............................................................................22

       B.     Plaintiffs' equal protection claims are meritless. ....................................24

              1.     Plaintiffs do not identify any similarly situated
                     comparators........................................................................................24

              2.     Plaintiffs' arguments for relaxing the similarly situated
                     requirement are meritless..................................................................27

3. There were conceivable rational bases for any differences in treatment..................................................34

C. Defendants are entitled to qualified immunity from plaintiffs' equal protection claims. ..................................................39

III. The district court properly granted summary judgment on plaintiffs' First Amendment claims. ..................................................42

A. Plaintiffs have waived their First Amendment arguments in multiple independent ways..................................................42

B. Plaintiffs' First Amendment claims are meritless..................................................44

C. Defendants are entitled to qualified immunity from plaintiffs' First Amendment claims. ..................................................53

IV. The district court properly granted summary judgment on plaintiffs' conspiracy claims..................................................54

CONCLUSION ..................................................56

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*145 Fisk, LLC v. Nicklas,*
986 F.3d 759 (7th Cir. 2021)..............................................................34, 35

*Baines v. Walgreen Co.,*
863 F.3d 656 (7th Cir. 2017)......................................................................53

*Bell v. Duperrault,*
367 F.3d 703 (7th Cir. 2004)................................................................28, 30

*Black Earth Meat Mkt., LLC v. Village of Black Earth,*
834 F.3d 841 (7th Cir. 2016).........................................................25, 27, 39

*Bordelon v. Chi. Sch. Reform Bd. of Trs.,*
233 F.3d 524 (7th Cir. 2000)............................................17, 18, 21, 43

*Bradley v. Village of University Park,*
59 F.4th 887 (7th Cir. 2023).........................................44, 48, 50, 51

*Brunson v. Murray,*
843 F.3d 698 (7th Cir 2016)......................................................................41

*Casna v. City of Loves Park,*
574 F.3d 420 (7th Cir. 2009)......................................................................23

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986) ...................................................................................15

*Crawford v. Countrywide Home Loans, Inc.,*
647 F.3d 642 (7th Cir. 2011).................................................................15, 20

*D.B. ex rel. Kurtis B. v. Kopp,*
725 F.3d 681 (7th Cir. 2013)......................................................................35

*Diadenko v. Folino,*
741 F.3d 751 (7th Cir. 2013)......................................................................42

*Engquist v. Or. Dep't of Agric.,*
553 U.S. 591 (2008) .............................................................................40, 41

*Fares Pawn, LLC v. Ind. Dep't of Fin. Insts.,*
755 F.3d 839 (7th Cir. 2014).................................................16, 26, 28, 40, 41

*FKFJ, Inc. v. Village of Worth*,
11 F.4th 574 (7th Cir. 2021) .............................. 15, 16, 20, 20-21, 24, 25, 26, 27,
28, 33, 42, 45, 46, 48, 49, 52, 52-53, 54

*Friend v. Valley View Cmty. Unit Sch. Dist. 365U*,
789 F.3d 707 (7th Cir. 2015)........................................21, 22, 23, 43, 44

*Geinosky v. City of Chicago*,
675 F.3d 743 (7th Cir. 2012)................................................................. 33

*Gilbank v. Wood Cnty. Dep't of Hum. Servs.*,
111 F.4th 754 (7th Cir. 2024) ............................................................. 55

*Horton v. Pobjecky*,
883 F.3d 941 (7th Cir. 2018)................................................................ 43

*Igaski v. Ill. Dep't of Fin. & Pro. Regul.*,
988 F.3d 948 (7th Cir. 2021)................................................................ 18

*Johnson v. Accenture LLP*,
142 F.4th 536 (7th Cir. 2025) .........................................................17-18

*Love v. Vanihel*,
73 F.4th 439 (7th Cir 2023) ................................................................ 40

*Malin v. Hospira, Inc.*,
762 F.3d 552 (7th Cir. 2014)................................................................ 53

*Manuel v. Nalley*,
966 F.3d 678 (7th Cir. 2020)........................................................47, 47-48

*Maulding Dev., LLC v. City of Springfield*,
453 F.3d 967 (7th Cir. 2006)................................................................ 24

*Milchtein v. Milwaukee County*,
42 F.4th 814 (7th Cir. 2022) .............................................22, 26, 28, 44, 46, 54

*Minocqua Brewing Co. v. Hess*,
160 F.4th 849 (7th Cir. 2025) ...........................................................47, 48, 51

*Moore v. W. Ill. Corr. Ctr.*,
89 F.4th 582 (7th Cir. 2023) ............................................................ 15, 39

*Nevel v. Village of Schaumburg*,
297 F.3d 673 (7th Cir. 2002)........................................................20, 28, 29, 30

*Norfleet v. Walker*,
684 F.3d 688 (7th Cir. 2012)........................................................22, 44

*Park v. Ind. Univ. Sch. of Dentistry*,
692 F.3d 828 (7th Cir. 2012)........................................................34, 35

*Paschall v. Tube Processing Corp.*,
28 F.4th 805 (7th Cir. 2022) ...........................................18, 19, 22, 44

*Purze v. Village of Winthrop Harbor*,
286 F.3d 452 (7th Cir. 2002)........................................................25, 26

*Racine Charter One, Inc. v. Racine Unified Sch. Dist.*,
424 F.3d 677 (7th Cir. 2005).............................................................25

*Raymond v. Ameritech Corp.*,
442 F.3d 600 (7th Cir. 2006)...............................................17, 19, 20

*Reget v. City of La Crosse*,
595 F.3d 691 (7th Cir. 2010)...............................................................24

*Reichle v. Howards*,
566 U.S. 658 (2012) ....................................................................40, 41

*RJB Props., Inc. v. Bd. of Educ.*,
468 F.3d 1005 (7th Cir. 2006).....................................................34, 35

*Santana v. Cook Cnty. Bd. of Rev.*,
679 F.3d 614 (7th Cir. 2012)...............................................46, 47, 51

*Smith v. Gomez*,
550 F.3d 613 (7th Cir. 2008)......................................................11, 55

*Smith v. Kind*,
140 F.4th 359 (7th Cir. 2025) ....................................39, 40, 41, 42, 54

*Swanson v. City of Chetek*,
719 F.3d 780 (7th Cir. 2013)......................................................28, 33

*Thayer v. Chiczewski*,
705 F.3d 237 (7th Cir. 2012)...............................................................39

*Thorncreek Apartments III, LLC v. Mick*,
886 F.3d 626 (7th Cir. 2018)...............................................................55

*United States v. Moore*,
543 F.3d 891 (7th Cir. 2008)......................................................25, 26

*Waukegan Potawatomi Casino, LLC v. City of Waukegan*,
128 F.4th 871 (7th Cir. 2025) ...................................................16, 20, 34

*Whitfield v. Spiller*,
76 F.4th 698 (7th Cir. 2023) .............................................................. 42

*Williams v. Dieball*,
724 F.3d 957 (7th Cir. 2013)...................................................21, 42, 49

*Woodruff v. Mason*,
542 F.3d 545 (7th Cir. 2008)............................................................. 28

**Statutes**

28 U.S.C. § 1291 .................................................................................... 2

28 U.S.C. § 1331 .................................................................................... 2

28 U.S.C. § 2107 .................................................................................... 2

42 U.S.C. § 1983 .................................................................................... 1

42 U.S.C. § 1985 ............................................................................... 1, 54

225 ILCS 10/3 ........................................................................................ 4

225 ILCS 10/3.01 ................................................................................... 4

225 ILCS 10/5 ................................................................................... 4, 51

225 ILCS 10/6 ................................................................................... 4, 31

225 ILCS 10/8 ............................................................................... 4, 5, 51

Department of Early Childhood Act,
Pub. Act 103-594 (2024) .................................................................. 4

**Other authorities**

Fed. R. App. P. 4 ................................................................................... 2

Fed. R. App. P. 28 ............................................................................... 23

Fed. R. Civ. P. 56 ............................................................................. 2, 15

Fed. R. Civ. P. 58 ................................................................................. 2

7th Cir. R. 28........................................................................................ 1

N.D. Ill. R. 56.1 ............................................................................................9, 17, 19

89 Ill. Admin. Code § 383.15 ...................................................................................5

89 Ill. Admin. Code § 383.25 ...............................................................................4, 5

89 Ill. Admin. Code § 383.30 ...................................................................................4

89 Ill. Admin. Code § 383.35 .........................................................................4, 5, 31

89 Ill. Admin. Code § 383.50 ...................................................................................5

89 Ill. Admin. Code § 383.55 ...................................................................................5

89 Ill. Admin. Code § 383.60 ...................................................................................5

89 Ill. Admin. Code § 383.65 ...................................................................................5

89 Ill. Admin. Code § 383.70 ...................................................................................5

89 Ill. Admin. Code § 383.90 .................................................................................37

89 Ill. Admin. Code § 383.115 .................................................................................5

89 Ill. Admin. Code § 383.120 .................................................................................5

89 Ill. Admin. Code § 383.150 .................................................................................5

89 Ill. Admin. Code § 383.155 .................................................................................6

89 Ill. Admin. Code § 407.70 ...................................................................................4

89 Ill. Admin. Code § 407.80 .............................................................................4, 51

89 Ill. Admin. Code § 407.130 .................................................................................4

89 Ill. Admin. Code § 407.140 .................................................................................4

89 Ill. Admin. Code § 407.150 .................................................................................4

89 Ill. Admin. Code § 407.190 .................................................................................4

89 Ill. Admin. Code § 407.370 .................................................................................4

89 Ill. Admin. Code § 407.380 .................................................................................4

89 Ill. Admin. Code § 407.390 .................................................................................4

**JURISDICTIONAL STATEMENT**

The jurisdictional statement of Plaintiffs-Appellants Safari Childcare, Inc. ("Safari") and James Ourth is not complete and correct. As required by 7th Cir. R. 28(b), Defendants-Appellees Richard Alexander, Gwendolyn Amber, Eva Camacho, Helen Cross, Stany D'Souza, Beth Girardier, Jodi Golembiewski, Sherrye Hampton, Joel Lamz, Mary Livorsi, Courtney Marshall, Jose Alex Medina, Carol Morris, Denice Murray, Robert Musial, Frank Neuman, Leslie Parello-Horton, Shirley Penny, Donna Riedl, Stacy Smith, Edie Washington-Gurley, Gail Williams, and Jodine Williams provide this statement.

Plaintiffs, a chain of daycare facilities and its owner-operator, filed a three-count second amended complaint, the operative one in this case, under 42 U.S.C. §§ 1983 and 1985(3), alleging violations of their rights under the First and Fourteenth Amendments to the United States Constitution. Doc. 104.[1] Counts 1 and 2, brought under section 1983 against all defendants, raised class-of-one equal protection claims and First Amendment retaliation claims, respectively. *Id.* at 122-25. Count 3 alleged that defendants had conspired to violate plaintiffs' right to equal protection, in violation of section 1985(3). *Id.* at 125.[2] The district court had subject

---

[1] This brief cites entries on the district court's docket as "Doc. __," plaintiffs' opening brief as "AT Br. __," and the short appendix as "SA__."

[2] The operative complaint listed count 3 as arising under section 1983. Doc. 104 at 125. Plaintiffs later clarified that this was "a typographical error" and that they intended to proceed under section 1985(3). Doc. 288 at 1 n.1.

matter jurisdiction over plaintiffs' action under 28 U.S.C. § 1331 because it raised federal questions.

On September 11, 2024, the district court granted summary judgment under Fed. R. Civ. P. 56 to defendants on counts 2 and 3. Doc. 307. On July 28, 2025, the district court granted summary judgment to defendants on count 1, Doc. 333, thereby disposing of all claims against all parties. A separate judgment order was entered on the district court docket pursuant to Fed. R. Civ. P. 58 that same day. Doc. 334. No motion to alter or amend the judgment was filed.

Plaintiffs filed a notice of appeal on August 22, 2025. Doc. 336. The notice of appeal was timely under 28 U.S.C. § 2107(a) and Fed. R. App. P. 4(a)(1)(A) because it was filed within 30 days of the judgment's entry. This court has jurisdiction over plaintiffs' appeal from a final judgment under 28 U.S.C. § 1291.

## ISSUES PRESENTED FOR REVIEW

1.      Whether this court should affirm the district court's grant of summary judgment to defendants on plaintiffs' class-of-one equal protection claims, where plaintiffs waived the relevant arguments, did not establish any triable issues on the merits, and did not show that defendants' actions violated clearly established law.

2.      Whether this court should affirm the district court's grant of summary judgment to defendants on plaintiffs' First Amendment retaliation claims, where plaintiffs waived the relevant arguments, did not establish any triable issues on the merits, and did not show that defendants' actions violated clearly established law.

3.      Whether the district court properly granted summary judgment to defendants on plaintiffs' section 1985(3) conspiracy claims, where plaintiffs failed to establish any underlying constitutional or statutory violation, let alone one motivated by class-based animus.

**STATEMENT OF THE CASE**

**Statutory and Regulatory Background**

The Illinois Department of Children and Family Services ("Department") licenses and regulates daycares in Illinois. *See* 225 ILCS 10/3(a).[3] Subject to narrow exceptions, all daycares must be licensed by the Department, *see id.*, which has promulgated regulations setting standards with which licensed providers must comply, such as maximum child-teacher ratios, staff qualifications, and facility safety requirements, *see* 89 Ill. Admin. Code §§ 407.130-.150, .190, .370-.390.

Both statutes and regulations require the Department — primarily via its licensing representatives — to monitor daycares for compliance with these standards and to investigate licensing complaints. *See* 225 ILCS 10/5(h); 89 Ill. Admin. Code §§ 383.25-.35. To facilitate this monitoring, daycares must keep detailed records. *See, e.g.*, 89 Ill. Admin. Code § 407.70. And they must allow licensing representatives access to their facilities and records, including during unannounced visits. *See* 225 ILCS 10/5(g); *id.* § 10/8(4)-(6); 89 Ill. Admin. Code § 407.80(c). While investigating a complaint, a licensing representative may "interview the complainant, if known, and other persons who may have [relevant] information." 89 Ill. Admin. Code § 383.35(c)(1); *see also* 225 ILCS 10/6(b) (Department may contact parents to assess care quality).

---

[3] The Illinois General Assembly recently amended and recodified many of the statutes governing daycare licensing, effective July 1, 2026. *See* Department of Early Childhood Act, Pub. Act 103-594, § 95-10 (2024) (moving, for example, relevant portion of 225 ILCS 10/3 to 225 ILCS 10/3.01).

If, after a complaint investigation or monitoring visit, the evidence "clearly shows" a violation of a licensing standard, 89 Ill. Admin. Code § 383.15, the licensing representative reports a substantiated violation, *id.* §§ 383.25(e), .35(d). The Department may then take enforcement action, usually beginning with a corrective plan, designed to address a violation that "can reasonably be expected to be corrected within 90 days." *Id.* § 383.50(a). A licensee that disagrees with a substantiated violation or with a corrective plan may request a "supervisory review" by the licensing representative's supervisor. *Id.* § 383.55.

If a licensee fails to make "significant progress" in correcting a substantiated violation and "further action at the supervisory level" appears unlikely to be productive, the Department may offer an "informal review" with an agency administrator. *Id.* §§ 383.60-.65. After the review, the administrator may recommend a range of next steps, from dismissing the matter to initiating further enforcement action, including license revocation or nonrenewal. *Id.* § 383.70(a). Sufficient grounds for revoking or refusing to renew a license include failure to comply with Department standards or license terms and refusal to provide records, "submit to an investigation," or "admit authorized [Department] representatives" during an investigation. 225 ILCS 10/8.

If the Department revokes or refuses to renew a daycare's license, that daycare may request a hearing before an administrative law judge ("ALJ"). *See* 89 Ill. Admin. Code §§ 383.115-.120, .150. The ALJ issues a recommended decision to the Department's Director, *id.* § 383.150(b)(14), who may adopt, reject, or modify the

5

ALJ's decision, *id.* § 383.155(a). "The Director's decision is the [Department's] final administrative decision," and is subject to judicial review in Illinois state court. *Id.* § 383.155(a)-(b).

**Safari's Licensing History**

Plaintiffs operated a chain of 12 daycares that were licensed by the Department for various periods in and around the 2010s — 2, at different times, at the same location in Mount Prospect, and 10 at other Chicago-area locations. *E.g.*, Doc. 321-8 at 11; *see infra* p. 7.

As several ALJs observed during enforcement actions, Safari daycares accrued "numerous" substantiated violations. Doc. 318-29 at 14 (East Dundee); Doc. 320-16 at 12 (Mount Prospect I); Doc. 321-8 at 12 (Streamwood); *see also, e.g.*, Doc. 317-1 at 20, 32, 38, 44 (examples of substantiated violations at Cary); Doc. 316-9 at 36, 61, 103-08, 133-36 (same at McHenry); Doc. 317-5 at 25, 53-57, 65-69, 82 (same at Palatine). One ALJ noted, for example, that "Safari [Streamwood] was not in compliance" with licensing standards "from the very first [monitoring] visit" in 2010, when a licensing representative "noticed violations in the child/staff ratio," incorrect staff files, no CPR-certified staff present, and "dangers with items in the infant[s'] cribs." Doc. 321-8 at 11; *see also, e.g.*, Doc. 317-10 at 10 (substantiated violations at Mount Prospect I in 2008); Doc. 317-11 at 9-10 (same in 2009). Many of these violations involved threats to children's "health and safety." Doc. 318-29 at 14; *see, e.g.*, Doc. 297-90 at 7 ("[b]roken glass" and inadequate mulch on East Dundee playground).

Plaintiffs also frequently attempted to restrict licensing representatives' access to facilities and records. *See, e.g.*, Doc. 318-29 at 14-17 (East Dundee); Doc. 321-8 at 16-17 (Streamwood). On several occasions, Safari staff called the police on Department employees. *See, e.g.*, Doc. 296-53 at 2.

Plaintiffs' daycares ultimately closed for varying reasons. Three — East Dundee, Mount Prospect I, and Streamwood — closed after the Department's Director issued final administrative decisions either revoking or refusing to renew their licenses. Doc. 318-29 at 2 (2016 East Dundee); Doc. 320-16 at 2 (2017 Mount Prospect I); Doc. 321-8 at 2 (2017 Streamwood).[4] Three centers closed in 2021 due to the loss of outside funding. Doc. 319-11 at 12-14 (Hanover Park and Kensington); Doc. 320-19 at 2 (Mount Prospect II). Two voluntarily surrendered their licenses without cause. Doc. 319-17 at 2 (2015 Highland Park); Doc. 321-5 at 2 (2016 Palatine). And four either abandoned or surrendered their licenses after the Department initiated enforcement action. Doc. 278 at 2 (2017 Belvidere); Doc. 278-8 at 2 (2017 Bensenville); Doc. 318-26 at 2 (2016 Cary); Doc. 320-9 at 2-3 (2015 McHenry); *see also* Doc. 321-11 at 6, 8 (Belvidere and Bensenville closed due to issues with landlord). In several cases, the Department learned that centers had closed only because licensing representatives found them nonoperational when attempting to conduct monitoring visits. Doc. 278 at 2 (Belvidere); Doc. 278-8 at 2 (Bensenville).

---

[4] An ALJ originally upheld the Department's refusal to renew Mount Prospect I's license in December 2014. Doc. 327-3 at 219. A state court later vacated that decision, Doc. 327-6 at 143, and the Department issued a new final administrative decision in 2017, Doc. 320-16 at 2.

**Procedural History**

Plaintiffs filed this action in November 2017.  Doc. 1.  The operative complaint, filed in August 2019, named as defendants 23 current and former Department employees.  Doc. 104 at 1.  Some defendants were licensing representatives, like Girardier, Livorsi, Medina, Parello-Horton, Neuman, Riedl, and Washington-Gurley.  *Id.* at 42, 44, 55, 68, 90, 93-94, 110.  Others were licensing representatives' supervisors, like Hampton and Lamz.  *Id.* at 62, 115.  And still others were administrators.  Alexander was the regional licensing administrator for Northern Illinois.  Doc. 272-3 at 5.  Morris was the regional licensing administrator for Southern Illinois from 2002 until 2012, when she became Associate Deputy Director of Licensing.  Doc. 272-2 at 5.  Murray held various positions, including Executive Deputy Director from 2006 to 2011, Deputy Director in the Division of Regulation and Monitoring from 2011 to 2014, Chief of Staff from 2014 to 2015, and Deputy Director of Licensing from 2015 to 2016.  Doc. 272-1 at 5.

Plaintiffs pleaded two counts under section 1983 and one under section 1985(3), each against all defendants.  Doc. 104 at 122-25.  The section 1983 counts alleged that defendants had (1) intentionally treated plaintiffs differently from similarly situated daycares, violating the Equal Protection Clause on a class-of-one basis, *id.* at 122-24, and (2) retaliated against them for their outreach to elected officials and police, violating the First Amendment, *id.* at 124-25.  The section 1985(3) count alleged that defendants had conspired "to deprive [p]laintiffs of their constitutional rights."  *Id.* at 125.  In support of their class-of-one claims, plaintiffs

included a list of 19 comparator daycares; they did not describe how they compiled the list. *Id.* at 122-23.

After discovery, defendants moved for summary judgment on all claims. Doc. 270. In support of their motion, defendants filed a statement of material facts, as required by N.D. Ill. R. 56.1. Doc. 272. Plaintiffs opposed the motion, Doc. 288, and submitted both a response to defendants' Rule 56.1 statement, Doc. 289, and a 385-page statement of additional material facts, Doc. 290. In their reply, defendants asserted that both of plaintiffs' Rule 56.1 submissions were improper due to their argumentative nature, deficient citations, and excessive length. Doc. 304 at 2-7.

The district court granted the motion in part and denied it without prejudice in part. SA16-17. It first observed that it was "hard-pressed to recall such an egregious violation of [Rule 56.1]" as that committed by plaintiffs. *Id.* at 5. It explained that their factual submissions contained "improper[ ] legal argument," lacked proper citations, and disregarded length limits. *Id.* at 5-6. The court declined to strike the statement of additional facts — though it "believe[d]" that doing so "would be within its discretion" — but did "deem[ d]efendants' statement of facts admitted in its entirety." *Id.*

Turning to the merits, the court granted the motion with respect to the First Amendment claims. *Id.* at 10-14. It focused its analysis on three purportedly retaliatory actions listed in plaintiffs' "largely underdeveloped" briefing: Murray's request that Department staff compile a "chronology" of Safari's past violations, Murray's designation of Safari as Morris's "project," and an email from Alexander

9

"asking whether [the Department] would take 'enforcement action on a Safari center in Cook that refused access to the licensing rep[resentative] and then called the police.'" *Id.* at 12-14 (cleaned up) (quoting Doc. 288 at 11); *see infra* pp. 45-51 (discussing these theories). The court concluded that none of these actions gave rise to a reasonable inference that any defendant had acted out of retaliatory animus. *See id.* The court also granted the motion with respect to the section 1985(3) claims, reasoning that that statute required a showing of "class-based invidiously discriminatory animus," and did not reach "class-of-one equal protection claims." *Id.* at 15 (cleaned up).

The court denied the motion without prejudice with respect to the class-of-one claims, explaining that it would "prefer[ ] to settle th[e] claim[s] on the merits," as plaintiffs' filings referenced emails that, the court remarked, could suggest potential animus among some defendants toward Safari. *Id.* at 9. But, the court added, plaintiffs' "challenging presentation of the facts" made evaluating the merits impossible. *Id.* The court therefore invited defendants to file a renewed motion and "require[d p]laintiffs to refile a statement of additional facts that *strictly complie[d]* with the Local Rules." *Id.* at 7 (emphasis in original).

Plaintiffs moved for reconsideration of the dismissal of their First Amendment and section 1985(3) claims. Docs. 310, 311. They did not discuss any specific evidence. *See id.* Instead, they asserted that the court was required to consider "the entire evidentiary record" in evaluating their First Amendment claims, rather than just the material referenced in their briefing, Doc. 310 at 4, and that their conspiracy

claims did not require proof of class-based animus, since class-of-one claims are cognizable under section 1983, Doc. 311 at 3-5.

The court denied the motions. It stated that it had "reviewed the record extensively" and addressed any "potentially genuine issues of material fact" relevant to the First Amendment claims. Doc. 332. And it again rejected plaintiffs' conspiracy claims, reaffirming that "[i]t is settled law that a civil conspiracy claim based on an [e]qual [p]rotection violation must be anchored in . . . class-based animus." *Id.* (citing *Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008)).

Meanwhile, defendants filed a renewed motion for summary judgment on the class-of-one claims. Doc. 313. Plaintiffs opposed, Doc. 324, this time submitting a 51-page response to defendants' statement of material facts, Doc. 326, and an 84-page statement of additional material facts, Doc. 327. In their reply, defendants argued that both submissions were improper. Doc. 331 at 2-7.

The district court granted the renewed motion. SA20. It again began by addressing plaintiffs' noncompliance with Rule 56.1, which plaintiffs had once again "utterly fail[ed]" to follow for all the same reasons identified in its previous opinion. *Id.* at 23. "Given that the [c]ourt [had] previously explained [the problems] and afforded [p]laintiffs an opportunity to correct them, the [c]ourt deem[ed d]efendants' facts admitted in full and str[uck p]laintiffs' [statement of additional facts]." *Id.* at 24-25 (cleaned up). Relying solely on defendants' Rule 56.1 statement, the court explained that plaintiffs' class-of-one claims failed for two independent reasons. *Id.* at 35-36. First, plaintiffs "ha[d] not identified any meaningful comparators," in the

11

form of daycares "visited by the same [licensing representatives], with similar violations." *Id.* at 35. Second, "there [was] a conceivable rational basis for each of [defendants'] actions" — responding to violations identified through monitoring visits and complaint investigations. *Id.* at 35-36. Given these barriers to plaintiffs' recovery, the court did not need to evaluate whether they had made a triable showing of animus. *Id.* at 34.

Plaintiffs appealed. Doc. 336.

**SUMMARY OF ARGUMENT**

The district court properly granted summary judgment to defendants on each of plaintiffs' claims, and this court can affirm on any of a variety of independent grounds.

To begin, plaintiffs' class-of-one claims suffer from a host of fatal defects. Plaintiffs have waived their arguments several times over: first, by relying on Rule 56.1 submissions that the district court properly disregarded, without developing any argument that the district court erred; second, by failing to raise their arguments in their summary judgment briefing; and third, by presenting undeveloped, unsupported arguments in their opening brief. Separately, the claims fail on the merits, both because plaintiffs have not pointed to evidence that would permit a reasonable jury to find that they were similarly situated to their proposed comparators and because defendants had rational bases for any differences in treatment. And, even if there were constitutional violations, defendants would be entitled to qualified immunity, since plaintiffs have not identified any precedents that clearly established that defendants' conduct was unconstitutional.

Plaintiffs' First Amendment retaliation claims fail for similar reasons. Plaintiffs have waived their arguments on these claims, too, both through failure to present them in the district court and through inadequate appellate briefing. They have similarly failed to raise any triable issue on the merits; no reasonable jury could find that defendants' conduct would likely deter a person of ordinary firmness from continuing to engage in protected activity or conclude that defendants acted out of

retaliatory animus.  Further, plaintiffs again cannot overcome defendants' qualified-immunity defense, since they do not cite any precedent that placed the unconstitutionality of defendants' actions beyond doubt.

Finally, plaintiffs' section 1985(3) conspiracy claims fail as a matter of law.  To prevail under this statute, plaintiffs must prove underlying constitutional or statutory violations motivated by class-based animus.  Plaintiffs have no viable predicate claims, and — even if they did — they have neither alleged nor offered any evidence of class-based animus.

**ARGUMENT**

**I.** **This court reviews the grant of summary judgment *de novo*.**

"This [c]ourt reviews the district court's grant of summary judgment *de novo*, viewing the facts in the light most favorable to . . . the non-moving party." *FKFJ, Inc. v. Village of Worth*, 11 F.4th 574, 584 (7th Cir. 2021). It may affirm "on any basis [it] find[s] in the record." *Moore v. W. Ill. Corr. Ctr.*, 89 F.4th 582, 595 (7th Cir. 2023). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see FKFJ*, 11 F.4th at 584. "A dispute of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *FKFJ*, 11 F.4th at 584 (cleaned up). "'[T]he burden on the moving party may be discharged by showing — that is, pointing out to the district court — that there is an absence of evidence to support the nonmoving party's case.'" *Crawford v. Countrywide Home Loans, Inc.*, 647 F.3d 642, 648 (7th Cir. 2011) (cleaned up) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The burden then shifts to the nonmoving party to "cite evidence in the record demonstrating [that] genuine issues remain[ ] for trial." *Id.* If "the non-moving party fails to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, Rule 56(c) mandates entry of summary judgment against that party." *FKFJ*, 11 F.4th at 585 (cleaned up).

**II.    The district court properly granted summary judgment on plaintiffs' equal protection claims.**

Plaintiffs' class-of-one equal protection claims impose "a heavy burden." *FKFJ*, 11 F.4th at 588; *accord Waukegan Potawatomi Casino, LLC v. City of Waukegan*, 128 F.4th 871, 879 (7th Cir. 2025) (emphasizing that "bar is intentionally high for class-of-one plaintiffs"). To prevail, plaintiffs must show, at minimum, "(1) that they have been intentionally treated differently from others similarly situated, and (2) that there is no rational basis for the difference in treatment." *Waukegan*, 128 F.4th at 877 (cleaned up).[5] Plaintiffs cannot carry this burden for myriad independent reasons.

**A.    Plaintiffs have waived their equal protection arguments in multiple independent ways.**

Plaintiffs have waived their arguments several times over. Some of the problems arise from their litigation choices in the district court, including their "egregious violation[s]" of that court's local rules. SA22. Others stem from their briefing on appeal.

---

[5] This court has left open several questions about class-of-one claims, including whether the plaintiff must show "that [the defendant] acted with some kind of bad motive not grounded in [her] public duties," and whether class-of-one challenges to discretionary administrative licensing decisions are cognizable. *Fares Pawn, LLC v. Ind. Dep't of Fin. Insts.*, 755 F.3d 839, 845, 848-49 (7th Cir. 2014). Because plaintiffs have not raised a triable issue on the settled elements of their class-of-one claims, the court need not reach those questions here. As discussed below, *infra* pp. 40-41, however, those open questions entitle defendants to qualified immunity.

### 1. Plaintiffs cannot rely on their improper Rule 56.1 submissions.

To start, plaintiffs failed to properly present the materials on which they now rely to the district court, which appropriately declined to consider them. Plaintiffs develop no argument that that decision — which this court reviews only for abuse of discretion, *Raymond v. Ameritech Corp.*, 442 F.3d 600, 604 (7th Cir. 2006) — was erroneous, or that a reasonable jury could find in their favor based on the resulting record. Plaintiffs' waiver of those issues dooms their class-of-one claims.

In analyzing those claims, the district court appropriately relied "solely upon [defendants'] version of events," *id.* at 608, because plaintiffs "egregious[ly] violat[ed]" Local Rule 56.1, SA22-25. That rule serves an "important function" in "structur[ing] the summary judgment process." *Bordelon v. Chi. Sch. Reform Bd. of Trs.*, 233 F.3d 524, 527 (7th Cir. 2000). It requires the movant to file a statement of material facts; the nonmovant may respond and file a statement of additional material facts. N.D. Ill. R. 56.1. And it mandates that each asserted fact "be supported by citation to the specific evidentiary material, including the specific page number, that supports it"; that the statements "not contain legal argument"; and that a nonmovant's statement of additional facts "not exceed 40 numbered paragraphs." *Id.* 56.1(d) (statement of additional facts); *see id.* 56.1(e) (similar for responses to statements). If a nonmovant does not comply with these requirements, a district court may deem the movant's facts admitted, strike the nonmovant's additional facts, and decide the motion "based solely" on the movant's Rule 56.1 statement. *Raymond*, 442 F.3d at 608; *accord, e.g.*, *Johnson v. Accenture LLP*, 142

17

F.4th 536, 542 (7th Cir. 2025); *Bordelon*, 233 F.3d at 529 (district court "entitled to disregard" evidence not identified in proper Rule 56.1 submission). After concluding that plaintiffs' Rule 56.1 submissions in opposition to the renewed motion for summary judgment fell "far short" of the rule's requirements, the district court took that course here, "deem[ing d]efendants' facts admitted" and striking plaintiffs' statement of additional facts. SA24-25.

Plaintiffs do not develop — and thus have waived — any argument that the district court abused its discretion in doing so. *See Paschall v. Tube Processing Corp.*, 28 F.4th 805, 812 n.3 (7th Cir. 2022) (argument not developed in opening brief is waived). Indeed, despite citing the filings involved, Docs. 326 and 327, nearly 100 times, *see, e.g.*, AT Br. 37, plaintiffs scarcely acknowledge the district court's rejection of them. The closest they come is a conclusory assertion that "[d]efendants relied exclusively on procedural technicalities" and that the district court "erred" in "excluding" their submissions. *Id.* at 20. But this court has made clear that Rule 56.1 is "important," not a mere technicality. *Bordelon*, 233 F.3d at 527.

Nor would even a developed argument have any merit. This court "ha[s] repeatedly held that district judges are entitled to insist on strict compliance with [Rule 56.1]." *Igaski v. Ill. Dep't of Fin. & Pro. Regul.*, 988 F.3d 948, 956 (7th Cir. 2021) (cleaned up). And, as the district court explained, plaintiffs "utterly fail[ed] to comply with the [rule]." SA23. Both their response to defendants' statement and their statement of additional facts were "largely conclusory" and "cite[d] evidence in an incoherent manner." *Id.* at 23-24 (providing example). Rather than referencing

18

"specific evidentiary material" with "specific page number[s]," N.D. Ill. R. 56.1(d)(2), plaintiffs often cited either no evidence or undifferentiated batches of exhibits, *see, e.g.*, Doc. 327 at 31 (assertion based "on information and belief"); *id.* at 23 (citing, in single sentence, 8 exhibits totaling over 150 pages). Many purported facts "impermissibly contain[ed] legal argument." SA22; *see, e.g.*, Doc. 327 at 18 (asserting that plaintiffs "were treated differently than similarly situated providers"). Further, although plaintiffs' additional facts were "labeled 1-40, [those labels] actually function[ed as] headings, each containing *multiple* subparts." SA24 (emphasis in original); *see, e.g.*, Doc. 327 at 81-84 (nine-paragraph "fact"); *cf.* N.D. Ill. R. 56.1(d)(1), (5) (nonmovant limited to 40 "concise numbered paragraphs"). In total, plaintiffs submitted over 100 "distinct evidentiary items," AT Br. 37, often spanning multiple paragraphs, *see* Doc. 327 at 18-84.

These failures were all the more "egregious," SA22, because the district court had warned plaintiffs, in its decision on defendants' original motion for summary judgment, that their Rule 56.1 submissions were inadequate and that it would demand "strict[ ] compli[ance]" in their second attempt, SA9 (cleaned up). After plaintiffs ignored this warning, the district court "properly" decided the motion based "only on [defendants'] Local Rule 56.1 submission." *Raymond*, 442 F.3d at 608; *see* Doc. 315 (defendants' Rule 56.1 statement). This court's review is limited to that same record. *See Raymond*, 442 F.3d at 608-11.

Plaintiffs do not offer — and thus have also waived, *Paschall*, 28 F.4th at 812 n.3 — any argument that a reasonable jury could find in their favor based on that

record. *See, e.g.*, AT Br. 37 (arguing only that stricken Rule 56.1 statement collected sufficient evidence to survive summary judgment).[6] That limited record does not support reversal. As the district court summarized, the evidence discussed in defendants' statement showed that plaintiffs "voluntarily surrendered their license, moved out of their location and ceased operations, or lost funding to operate" in 9 of their 12 facilities. SA32 (citing Doc. 315); *see supra* p. 7. In each of the other three, plaintiffs "exercised their right to an administrative review process," at the conclusion of which "an [ALJ] affirmed [the Department's] decision" to revoke or refuse to renew plaintiffs' license. SA32. On that record, no reasonable jury could find that plaintiffs were "intentionally treated differently from others similarly situated"; indeed, there is no obvious potential comparator. *Waukegan*, 128 F.4th at 877 (cleaned up); SA35; *cf. Raymond*, 442 F.3d at 611 (Title VII plaintiff could not prove differential treatment from similarly situated comparator on record limited to defendant's Rule 56.1 statement). And even in the three instances where a location closed due to a Department enforcement proceeding, there was a "rational basis" for defendants' actions, *Waukegan*, 128 F.4th at 877 (cleaned up): the agency's "legitimate interest in ensuring that its rules and regulations are upheld," *Nevel v. Village of Schaumburg*, 297 F.3d 673, 682 (7th Cir. 2002); *see, e.g.*, *FKFJ*, 11 F.4th at

---

[6] Plaintiffs criticize defendants for not affirmatively offering evidence rebutting their claims. AT Br. 18-19. Setting aside the fact that defendants *did* offer such evidence, *see* SA25-32 (summarizing), this argument misunderstands the summary judgment standard. Plaintiffs would bear the burden of proving their claims at trial. *See FKFJ*, 11 F.4th at 588. Thus, defendants could discharge their summary judgment burden simply by "pointing out to the district court" that there was "an absence of evidence to support [plaintiffs'] case." *Crawford*, 647 F.3d at 648 (cleaned up).

590-91 (rational to enforce ordinance against violator); SA35-36. The district court correctly granted summary judgment based on the record properly before it. The court can affirm on this basis alone.

### 2. Plaintiffs failed to raise their arguments in the district court.

Plaintiffs independently waived their class-of-one arguments by failing to raise them in their summary judgment briefing — in addition to their Rule 56.1 submissions — in the district court. *See Williams v. Dieball*, 724 F.3d 957, 961 (7th Cir. 2013) (argument not raised or developed in district court is waived). District courts are not "required to wade through improper [Rule 56.1 submissions] in search of a genuinely disputed fact." *Bordelon*, 233 F.3d at 529; *accord Friend v. Valley View Cmty. Unit Sch. Dist. 365U*, 789 F.3d 707, 711 (7th Cir. 2015). Plaintiffs' district court briefing did not meaningfully discuss any of the evidence on which they now rely, but instead repeatedly asserted that a "review of the disputed facts in [plaintiffs' Rule 56.1 filings would] demonstrate" that their claims had merit. *E.g.*, Doc. 325 at 7; *see id.* at 9 (similar claim with unexplained list of citations to Rule 56.1 statement); *cf. Williams*, 724 F.3d at 961 ("general" or "underdeveloped" argument does not preserve issue (cleaned up)). The district court was "not required to scour through" plaintiffs' Rule 56.1 submissions — which, for the renewed motion for summary judgment, totaled 135 pages, Docs. 326, 327 — "to make [their] case for [them]." *Friend*, 789 F.3d at 711 (cleaned up) (same principle at appellate level). Having failed to make any "specific argument[s] to the district court," plaintiffs cannot do so for the first time on appeal. *Williams*, 724 F.3d at 961 (cleaned up).

21

### 3. Plaintiffs waived their arguments through inadequate appellate briefing.

Plaintiffs have also waived their arguments through multiple deficiencies in their opening brief.

To begin, plaintiffs' arguments are conclusory and undeveloped. *See Paschall*, 28 F.4th at 812 n.3 (undeveloped arguments are waived); *see also, e.g.*, AT Br. 18 (requesting that court strike defendants' summary judgment filings without identifying either specific defects or relevant authority). For example, they routinely state that comparators were "similarly situated" without explaining why. *E.g.*, AT Br. 38. Similarly, they make comparative judgments — for instance, that violations elsewhere were "more egregious" than those at Safari centers, *id.* at 39 — without describing any supporting facts. And even though section 1983 "creates a cause of action based on personal liability and predicated upon fault," *Milchtein v. Milwaukee County*, 42 F.4th 814, 824 (7th Cir. 2022) (cleaned up), plaintiffs often do not link their arguments to particular defendants, instead lumping all 23 together, *see, e.g.*, AT Br. 20-33.

Nor do plaintiffs provide adequate citations. *See Friend*, 789 F.3d at 712 (striking unsupported arguments). Rather than citing the record directly, plaintiffs almost exclusively refer to their Rule 56.1 submissions, which they effectively seek to incorporate by reference. *See, e.g.*, AT Br. 22-23 (stating that analysis is "detailed in" three Rule 56.1 submissions, totaling over 500 pages). Both this indirect citation method, *Friend*, 789 F.3d at 712, and incorporation by reference, *Norfleet v. Walker*, 684 F.3d 688, 690-91 (7th Cir. 2012), are impermissible. And they are particularly

problematic here for several reasons.  First, plaintiffs "do[ ] not provide a statement of facts compliant with [Fed. R. App. P. 28(a)(6)]" to which the court can refer "to verify [their] factual assertions." *Friend*, 789 F.3d at 711-12; *see* AT Br. 11-14 (bullet-point procedural history).  Second, as discussed, *supra* pp. 18-19, the Rule 56.1 submissions plaintiffs cite are themselves improper, often referencing large swathes of exhibits and again making it difficult or "impossible to verify factual assertions." *Casna v. City of Loves Park*, 574 F.3d 420, 424 (7th Cir. 2009).

That verification is necessary because, even where it is possible to follow the citation chains to their ends, the record often does not support plaintiffs' assertions. For example, plaintiffs cite a Rule 56.1 statement for the proposition that Safari McHenry was not the subject of any complaints "after enforcement began in 2014." AT Br. 28 (citing Doc. 290 at 247).  Their Rule 56.1 statement — which correctly notes that the Department refused to renew the center's license in 2013, not 2014 — cites an exhibit for a similar proposition.  Doc. 290 at 247 (citing Doc. 297-42).  But the exhibit shows only that the Department notified plaintiffs of the nonrenewal on November 1, 2013; it says nothing about the facility's subsequent disciplinary history.  Doc. 297-42 at 2.  And materials elsewhere in the record show that Safari McHenry was the subject of multiple complaints after the Department announced its decision.  *See* Doc. 316-9 at 439, 479, 510, 579; *see also infra* pp. 38-39 (discussing other inaccuracies).  These briefing deficiencies alone warrant affirmance.

## B. Plaintiffs' equal protection claims are meritless.

Even if plaintiffs had properly preserved and presented their class-of-one arguments, they would fail on the merits. Plaintiffs point to no evidence showing that they were similarly situated to their proposed comparators, and their arguments for overlooking that deficiency are unpersuasive. *See FKFJ*, 11 F.4th at 588-90. Further, in any event, defendants had rational bases for any differences in treatment. *See id.* at 588, 590-91.

### 1. Plaintiffs do not identify any similarly situated comparators.

"To satisfy the 'similarly situated' element, [plaintiffs] and [their] comparators must be *prima facie* identical in all relevant respects or directly comparable in all material respects." *FKFJ*, 11 F.4th at 588 (cleaned up). "While this is not a precise formula, it is nonetheless clear that similarly situated individuals must be very similar indeed." *Reget v. City of La Crosse*, 595 F.3d 691, 695 (7th Cir. 2010) (cleaned up); *accord Maulding Dev., LLC v. City of Springfield*, 453 F.3d 967, 970 (7th Cir. 2006) (similarly situated is "high burden" in class-of-one context (cleaned up)). *Contra* AT Br. 34 (arguing for lower standard based on inapposite Title VII caselaw).

Plaintiffs cannot satisfy this standard. "[E]vidence of similarity requires specificity." *FKFJ*, 11 F.4th at 589 (cleaned up). Plaintiffs must explain "how [comparators] were similarly situated," not "merely state[ ]" that they were. *Id.* Yet, as in the district court, plaintiffs "fail[ ] to present any meaningful argument" on this point, citing no evidence concerning the relevant features of their proposed comparators. *Id.*; *see* SA35 (plaintiffs "utterly failed" to identify similarly situated

24

comparators).  At best, they assert — without citation — that the comparators they reference come from a "randomized" selection of "two daycare centers per town" containing a Safari center, "irrespective of any [d]efendant's prior involvement."  AT Br. 33.  That claim, even if true, does not establish that these "random[ ]" comparators, *id.*, were "identical in all relevant respects" to plaintiffs, *FKFJ*, 11 F.4th at 588 (cleaned up).  On the contrary, it essentially concedes that they were not, since plaintiffs acknowledge that they did not control for defendants' participation, and "where different decision-makers are involved, two decisions are rarely similarly situated in all relevant respects."  *United States v. Moore*, 543 F.3d 891, 897 (7th Cir. 2008) (cleaned up); *see* SA35 (noting this problem).

Nor do plaintiffs account for other characteristics that this court has identified as relevant.  They do not, for example, compare their and their comparators' histories of regulatory complaints or violations.  *See, e.g.*, *Black Earth Meat Mkt., LLC v. Village of Black Earth*, 834 F.3d 841, 851-52 (7th Cir. 2016) (not similarly situated where no evidence of similar complaints); Doc. 272-1 at 7 (Department considers "center's history" in determining compliance).  In fact, at least one of their comparators was not even subject to the same licensing regime as plaintiffs.  *See* Doc. 327-12 at 84 (comparator evidence involving "classroom not licensed by [Department]"); *Racine Charter One, Inc. v. Racine Unified Sch. Dist.*, 424 F.3d 677, 681-83 (7th Cir. 2005) (not similarly situated where subject to different state-law requirements).  And much of their evidence comes from "different time periods." *Purze v. Village of Winthrop Harbor*, 286 F.3d 452, 455 (7th Cir. 2002); *see, e.g.*, Doc.

327-5 at 92 (comparator evidence from 1991).  Because plaintiffs failed to "present[ ]

evidence of a similarly situated entity," it is "unnecessary to take the analysis any

further; [their] claim[s] simply fail[ ]."  *FKFJ*, 11 F.4th at 589 (cleaned up).

Plaintiffs object to the district court's observation that, to meet the similarly

situated requirement, they would need to identify comparators that interacted with

the same defendants.  AT Br. 33-34; *see* SA35.  That argument is largely academic,

since plaintiffs offer no evidence that they were similarly situated to their

comparators in any other relevant respect.  But, regardless, it is incorrect.  This court

has repeatedly observed that, to qualify as similarly situated, a comparator generally

must have interacted with the same state actor as the plaintiff.  *See, e.g.*, *Moore*, 543

F.3d at 897; *Purze*, 286 F.3d at 455.  That requirement follows from basic principles

of both section 1983 and equal protection doctrine.  The former authorizes recovery

"only if [the defendant] personally caused or participated in a constitutional

deprivation."  *Milchtein*, 42 F.4th at 824.[7]  And the latter forbids only intentional

discrimination; "[n]egligent or accidental differential treatment does not count."

*Fares Pawn*, 755 F.3d at 846.  Thus, plaintiffs need to show that each defendant

personally and intentionally singled them out for disparate treatment.  They cannot

---

[7]  This principle is one reason why plaintiffs err in asserting that Morris and
Murray's supervision of the Department's licensing operations means that all Illinois
daycares faced the same decisionmaker.  AT Br. 34-35.  Morris and Murray's
supervisory status does not make them vicariously liable for any subordinate's
actions — let alone render all their subordinates liable for one another's activities.
*See Milchtein*, 42 F.4th at 824.

do so without evidence of how each defendant treated a similarly situated comparator.

Plaintiffs are also wrong to suggest that either the district court or defendants stipulated to a set of similarly situated comparators. AT Br. 33. The district court merely noted that the parties would engage in discovery concerning 19 proposed comparators listed in plaintiffs' operative complaint. Doc. 129. It did not hold that those comparators were similarly situated. *See id.* Similarly, at the February 2021 status conference plaintiffs reference, defendants' counsel simply stated her understanding that plaintiffs' then-pending request for discovery concerning "similarly situated providers," Doc. 190 at 2 n.1, was limited to the 19 comparators plaintiffs had previously identified, Doc. 193 at 12. She did not "confirm[ ]" that those comparators were similarly situated to plaintiffs. *Contra* AT Br. 33.

Next, plaintiffs contend that "comparator similarity is a factual issue reserved for the jury." AT Br. 34, 36. But summary judgment is "proper when no reasonable factfinder could find the [similarly situated] requirement is met." *FKFJ*, 11 F.4th at 588. This court has therefore routinely affirmed grants of summary judgment against plaintiffs who failed to offer sufficient proof of similarity. *See, e.g.*, *id.* at 588-89; *Black Earth*, 834 F.3d at 852. It should do the same here.

### 2. Plaintiffs' arguments for relaxing the similarly situated requirement are meritless.

Unable to satisfy the ordinary similarly situated requirement, plaintiffs seek an exemption. They attempt to fit this case into the "very limited number of class-of-one cases" where this court has relaxed this requirement because "animus is readily

apparent." *FKFJ*, 11 F.4th at 589. That argument stumbles at the threshold because, even under a relaxed standard, plaintiffs' comparator evidence would be insufficient. *Cf. Swanson v. City of Chetek*, 719 F.3d 780, 785 (7th Cir. 2013) (plaintiff could proceed with less-than-perfect, but still "helpful," comparator because of "very strong" "direct showing of animus"). And, regardless, plaintiffs cannot make the necessary showing of animus. These "unusual" cases, *Fares Pawn*, 755 F.3d at 845 n.3, have "require[d] proof of a totally illegitimate animus toward the plaintiff by the defendant," *Swanson*, 719 F.3d at 784-85 (cleaned up) (defendant's actions "appear[ed] illegitimate on their face"). "Bureaucratic inefficiencies and even downright rudeness do not rise to this level." *Bell v. Duperrault*, 367 F.3d 703, 709 (7th Cir. 2004). Instead, "a plaintiff must show that the government action was a spiteful effort to 'get' him for reasons wholly unrelated to any legitimate state objective." *Nevel*, 297 F.3d at 682 (cleaned up); *accord Bell*, 367 F.3d at 709 (plaintiff must show "deep-seated animosity" (cleaned up)). Plaintiffs cannot do so.

Plaintiffs point first to emails by a handful of defendants expressing disapproval of plaintiffs' practices or enthusiasm for enforcement action against them. AT Br. 23.[8] But this court has rejected claims premised on similar remarks. *See Nevel*, 297 F.3d at 681-82; *cf. Woodruff v. Mason*, 542 F.3d 545, 552 (7th Cir. 2008) ("If the natural tensions that result from adversarial proceedings and

---

[8] Most of the emails came from Morris, with two from Hampton and one each from Livorsi, Medina, and Murray. Doc. 327-3 at 205; Doc. 327-9 at 116, 120; Doc. 327-10 at 212, 251; Doc. 327-11 at 134; Doc. 327-12 at 10, 13, 17, 21, 25, 150-51, 153. They thus have no bearing on plaintiffs' claims against most defendants. *See Milchtein*, 42 F.4th at 824.

regulatory enforcement actions sufficed to establish evidence of retaliatory motive, then the regulatory scheme could very well be undermined.").  In *Nevel*, a permitting official commented that the plaintiff, a permit applicant, "was 'a guy who decided to violate the law' and 'nowhere in this country should the reward for violating a . . . law be a pat on the back, a sly wink and "Go ahead."'"  297 F.3d at 681-82 (cleaned up).  This court explained that these statements did not demonstrate "totally illegitimate animus."  *Id*. at 682.  Rather, a reasonable jury could conclude only that they arose from the official's "legitimate interest in ensuring that [the relevant] rules and regulations [were] upheld."  *Id*.

So too here.  Rather than "a spiteful effort to 'get' [plaintiffs]," the emails plaintiffs cite reflect the writers' "legitimate interest" in enforcing the licensing standards.  *Id*. (cleaned up).  For example, Hampton, a licensing supervisor, commented that "[g]reed is the root of all evil" in the course of criticizing Safari for failing "to follow the [s]tandards."  Doc. 327-12 at 150.  Morris, the Associate Deputy Director of Licensing, described as "sickening" Safari's unwillingness to "comply [with Department rules] and cooperate" with licensing officials.  *Id*. at 10.  The full text of her reference to "jokers" tells the same story:  "[I]f [these] jokers would follow the rules, we wouldn't have to deal with [their] nonsense all the time . . . ."  *Id*. at 25; *see also id*. at 17 ("I sure hope Ourth's new attorneys have a frank and earnest discussion with him.  'Dude, get your head out of your butt.  These are clear-cut violations and they will win.'").  And no reasonable jury could reasonably understand enthusiastic responses to successful licensing actions, *e.g.*, Doc. 327-9 at 120; Doc.

327-10 at 251, as proof of "deep-seated [personal] animosity," *Bell*, 367 F.3d at 709 (cleaned up), rather than a professional interest "in ensuring that [the Department's] rules and regulations are upheld," *Nevel*, 297 F.3d at 682. The emails do not prove "totally illegitimate animus," *id.*, or excuse the lack of a similarly situated comparator.

Plaintiffs' other arguments, AT Br. 23-33, fail for a variety of reasons. Many are circular. They purport to show animus by explicitly or implicitly comparing plaintiffs' experience to that of "similarly situated daycares." *E.g.*, *id.* at 27. But plaintiffs aim to show animus only because they cannot satisfy the similarly situated requirement, so this type of comparison gets them nowhere. Other arguments are illogical on their own terms. For instance, the fact that the Department revoked non-Safari daycares' licenses for severe violations does not mean that it could not legitimately take enforcement action against Safari for less severe violations. *Contra id.* at 25. And other assertions simply lack record support. Plaintiffs claim, for example, that "[d]efendants disparaged [them] to their [l]andlords," *id.* at 29, but the relevant exhibit shows no such thing. Morris merely told Hampton that "rumor ha[d] it that [plaintiffs'] landlord refused to renew their lease." Doc. 327-12 at 150.

This last category also includes plaintiffs' baseless claims that some defendants "fabricated" complaints or violations or pursued investigations that they knew "lacked legitimacy." AT Br. 24, 27. Plaintiffs make four such allegations. First, they contend that "multiple [d]efendants" impermissibly sought to interview parents as part of investigations, and that they violated a Department procedure by

30

failing, when asked, to cite a statute or regulation authorizing them to do so. *Id.* at 23-24. Both points are wrong: Department staff have authority to interview parents and any "other persons who may have information relevant to [a] complaint." 89 Ill. Admin. Code § 383.35(c)(1); *see also, e.g.*, 225 ILCS 10/6(b) (Department may access records and contact parents, including through "random surveys," to evaluate license renewal). While plaintiffs identify one occasion on which the Department considered disciplining an employee for "violat[ing] confidentiality policy" by *sharing* information with parents, Doc. 327-3 at 174, they do not explain how contacting parents to *gather* information could raise any confidentiality concerns, Doc. 293-33 at 2. And the procedure that plaintiffs reference requires a citation to "the applicable licensing standard" "[f]or each substantiated violation" "[a]t the conclusion" of an investigation. Doc. 293-46 at 2. It does not require the Department to provide on-demand citations for every investigative step, and defendants' decision not to do so was not an "express[ ] acknowledge[ment]" that the investigations "lacked legitimacy." *Contra* AT Br. 24.

Plaintiffs' second theory — that Morris fabricated a complaint against them, *id.* at 27, 50 — fares no better. Plaintiffs base this argument on the fact that, during discovery in this case, the Department could not locate a cover form for a complaint against Safari Streamwood that Morris discussed in a 2014 email. Doc. 327-10 at 262. No reasonable jury could infer fraud or animus from this apparent paperwork error. Morris's email identified the complaint's source as a former Safari employee,

*id.*, and Safari staff acknowledged to investigators that several of the allegations were accurate, *see id.* at 175-76; *see also id.* at 178-89 (substantiated violations).[9]

Plaintiffs next take issue with a monitoring report that Riedl, a licensing representative, submitted concerning Safari East Dundee. AT Br. 26; *see* Doc. 327-11 at 121-30. Riedl indicated that the center had violated a standard requiring that childcare "be given in [a] manner that meets children's health & safety & nurturing requirements," and noted that she "need[ed] contact information on parents of infants & toddlers & copies of infant/toddler diaper charts." Doc. 327-11 at 124 (cleaned up). Contrary to plaintiffs' argument that this information request had "no relation to the purported violation," AT Br. 26, Riedl explained that she needed the information to investigate a complaint alleging that children's diapers were not changed frequently enough, leaving one with multiple "bleeding diaper rash[es]" — a concern plainly relevant to "children's health & safety." Doc. 327-11 at 81, 124; *see* Doc. 317-17 at 48 (requesting same information on earlier visit); *see also* Doc. 327-3 at 59-60. And, in any event, the same visit uncovered multiple other problems related to the same standard, such as classrooms with impermissible child-teacher ratios. Doc. 327-11 at 123; *see also, e.g., id.* at 127-28 (hazards on playground); *id.* at 49 (center violated same standard 10 days earlier with improper child-teacher ratios).

---

[9] Plaintiffs misrepresent the record in claiming that "[d]efendants confirmed that no staff member received a call [from the complainant] or had any knowledge of the alleged complaint." AT Br. 50. They cite only testimony from a Safari employee that "every person asked has said they have no idea who[m] the complaint was called in to." Doc. 298-58 at 2. Hearsay that unnamed declarants did not know who received a complaint is not "confirm[ation]" from "[d]efendants" that no one did. *Contra* AT Br. 50.

Again, no reasonable jury could infer "totally illegitimate animus" from Riedl's note concerning an information request. *Swanson*, 719 F.3d at 784 (cleaned up).

Finally, plaintiffs criticize Livorsi, another licensing representative, for citing a teacher for a lack of "skill and competence" for "singing very loudly in [an] infant room." Doc. 327-9 at 41; *see* AT Br. 28. But Livorsi's assessment that it was inappropriate to "belt[ a song] out" in a room full of infants, rather than performing a "lullaby," Doc. 296-73 at 3, is not "illegitimate on [its] face" and does not raise a reasonable inference of animus, *Swanson*, 719 F.3d at 785.

This case thus looks nothing like the two decisions plaintiffs cite in which this court did not strictly enforce the similarly situated requirement. The first, *Geinosky v. City of Chicago*, 675 F.3d 743 (7th Cir. 2012), "occurred at a distinguishable procedural stage — the pleadings," when, "[u]nlike [at] summary judgment, [this court] ha[s] consistently held a plaintiff need not identify a similarly situated entity." *FKFJ*, 11 F.4th at 590 (citing *Geinosky*, 675 F.3d at 748 n.3). In the second, *Swanson*, the plaintiffs "provided a plausible motive and detailed a series of alleged actions by [the defendant] that appear[ed] illegitimate on their face." 719 F.3d at 785. In particular, the plaintiffs showed that the defendant — who was both the mayor and the plaintiffs' neighbor — had "harass[ed]" them because of a personal dispute about a fence the plaintiffs were building between their properties. *See id.* at 781-82 (describing harassment, including "telling the fence building team that [the plaintiffs] were drug dealers and unlikely to pay"). Plaintiffs here offer no evidence of any such personal motive or of similar facially illegitimate harassment. They thus

33

identify no reason for this court to relax the similarly situated requirement, which defeats their class-of-one claims.

### 3. There were conceivable rational bases for any differences in treatment.

Plaintiffs' claims independently fail at the second step of the class-of-one inquiry. This prong "ask[s] whether a *conceivable* rational basis for the difference in treatment exists." *145 Fisk, LLC v. Nicklas*, 986 F.3d 759, 771 (7th Cir. 2021) (cleaned up). "[T]he rational basis need not . . . be the *actual* justification": "[a]ny reasonably conceivable state of facts that could provide a rational basis will suffice." *Id.* (cleaned up) (emphasis in original); *accord Waukegan*, 128 F.4th at 878 ("Once a reason is identified, true or not, we may look no further." (cleaned up)).[10] Because "conceivable rational bas[es] exist[ ] for [defendants'] conduct," plaintiffs' "claim[s] must fail." *Waukegan*, 128 F.4th at 878.

As a threshold matter, plaintiffs' extensive history of regulatory complaints and violations rationally explains any differences in treatment. A decisionmaker may "rationally" conclude that past misconduct "ma[kes an entity] more likely to engage in future misconduct." *RJB Props., Inc. v. Bd. of Educ.*, 468 F.3d 1005, 1010 (7th Cir. 2006); *accord Park v. Ind. Univ. Sch. of Dentistry*, 692 F.3d 828, 833 (7th Cir. 2012). *Park*, for example, held that a university could rationally discipline a graduate

---

[10] Plaintiffs assert in passing that they can prevail by showing *either* a lack of any rational basis or illegitimate animus. AT Br. 20. This court's "recent decisions could not have been more clear," however, that "[i]t is only when courts can hypothesize no rational basis for the action that allegations of animus come into play." *Waukegan*, 128 F.4th at 878 (cleaned up).

34

student accused of not meeting professional standards more harshly than peers who committed a single "more serious violation" — "a cheating scandal" — because she had a long history of academic difficulties, unprofessional conduct, and policy violations. 692 F.3d at 830, 833. In the same way, defendants could rationally consider plaintiffs' history of violations and uncooperativeness, *see supra* pp. 6-7, in conducting investigations and requiring corrective measures. *See* Doc. 272-1 at 7 (Department considers "center's history" in determining compliance). And since plaintiffs have offered no evidence that their comparators had similarly problematic histories, this factor rationally explains any differential treatment, even in cases where a comparator allegedly committed a single "more severe violation." *Park*, 692 F.3d at 833 ("no reason to suppose [other] students" had comparable disciplinary histories); *see RJB Props.*, 468 F.3d at 1010 (plaintiffs must "eliminate any reasonably conceivable state of facts that could provide a rational basis for the classification" (cleaned up)). Plaintiffs' poor compliance history provides "a conceivable rational basis for [any] difference in treatment." *145 Fisk*, 986 F.3d at 771 (cleaned up).

While that factor alone sufficiently explains defendants' actions, plaintiffs' claims also fail for more granular reasons. They frequently criticize defendants for employing varying investigative and monitoring methods. *E.g.*, AT Br. 38. But, as this court has recognized, different circumstances warrant different approaches. *See, e.g., D.B. ex rel. Kurtis B. v. Kopp*, 725 F.3d 681, 686-87 (7th Cir. 2013) (difference in complainant credibility justified pursuing one allegation and not another). Take, for

example, plaintiffs' argument that Hampton "demanded unsupervised staff interviews" at Safari but not at comparators. AT Br. 38. The underlying administrative complaint alleged that Safari staff "ha[d] been instructed by their corporate office to cut back on the food portions provided to the children" and that children were receiving inadequate portions as a result. Doc. 327-5 at 52. Hampton could rationally believe that Safari staff would be more forthcoming outside the presence of supervisors who both controlled their employment and allegedly gave them improper instructions. And none of the comparator evidence that plaintiffs identified in their Rule 56.1 statement — which they cite, without elaboration, in their brief, AT Br. 38 — involved similar alleged improper directives from supervisors. *See* Doc. 327 at 26; Doc. 327-4 at 12 (child-teacher ratio and unsafe playground conditions); *id.* at 27 (child left in classroom); *id.* at 114, 165 (child-teacher ratio); Doc. 327-5 at 61 (same). Instead, those matters involved conditions that Department staff could assess by visiting the facilities and reviewing their records, and that the daycares themselves sometimes acknowledged. *See, e.g.*, Doc. 327-4 at 37 (center director acknowledged violation and undertook remedial measures); *id.* at 116 (licensing representative reviewed records and observed appropriate staffing levels). Further, plaintiffs' own submissions show that Department staff often did interview other daycares' employees without supervisors present. *See, e.g.*, Doc. 327-5 at 157-60, 162 (no "[o]thers [p]resent" at teacher interviews); Doc. 327-6 at 11-13 (same). The record thus shows not intentional differential treatment, but appropriate fact-specific judgments.

The same pattern extends to plaintiffs' arguments about the corrective measures defendants ordered, which again gloss over relevant factual differences between daycares. For instance, plaintiffs' complaint that Safari East Dundee received less time to add mulch to a playground than did a comparator, AT Br. 28, ignores several important points. Safari's violation occurred in August, Doc. 297-90 at 7, and the comparator's in late November, Doc. 297-92 at 2. It was rational to treat the need for playground cushioning as more pressing in the summer (when children would often play outside) than over the winter (when children would more likely remain indoors and, in any event, mulch would freeze and harden). *Cf. id.* (requiring comparator's mulch in time for "spring"). And the dearth of mulch was not the only problem with Safari's playground: the Department's licensing representative, Riedl, also found "[b]roken glass" on the equipment. Doc. 297-90 at 7. This problem, too, amply supported her treating the playground as requiring immediate attention.

Defendants also appropriately accounted for factual differences in other respects. Plaintiffs assert, for example, that another licensing representative, Girardier, "imposed a punitive 'surrender with cause' on [Safari Bensenville], barring reopening for one year, while granting a routine close/surrender to [another] center." AT Br. 39. But these classifications followed directly from Department regulations, which require that "a surrender of a license [that] . . . occurs after the Department has offered an informal review . . . shall be construed as a 'surrender with cause.'" 89 Ill. Admin. Code § 383.90(g). This rule applied to Safari Bensenville, which elected to

surrender its license after the Department offered an informal review.  Doc. 327-12 at 2.  In contrast, plaintiffs provide no evidence that the comparator they cite had also been offered an informal review before surrendering its license; indeed, the single email thread they reference does not even name the center at issue.  Doc. 327-6 at 34-35.

Unable to show irrational treatment on the existing record, plaintiffs often mischaracterize or overstate its contents.  For instance, they assert that Neuman, also a licensing representative, repeatedly visited Safari McHenry to investigate a complaint concerning child-teacher ratios "despite finding no . . . violations," AT Br. 40.  The relevant exhibit, however, shows that multiple teachers and the center's director admitted to ratio violations.  Doc. 327-10 at 122, 124, 127, 130; *see also id.* at 151-52 (notice of substantiated violations).  Similarly, plaintiffs contend that Parello-Horton, another licensing representative, "[e]scalated a triple hearsay rumor into a formal complaint against [Safari]," AT Br. 40, but the cited exhibit shows only that she made a note of the conversation without initiating any complaint or investigation, Doc. 327-10 at 222.  *Compare also* AT Br. 40 (Parello-Horton "ignor[ed]" safety concern at comparator), *with* Doc. 327-10 at 219-20 (Parello-Horton reported concern at comparator to supervisor and discussed ongoing effort to resolve).  And plaintiffs' sweeping assertion that the Department declined to take enforcement action against a group of non-Safari daycares "responsible for over 178,000 violations," AT Br. 19, is wrong several times over.  The 178,000 figure comes from a Department FOIA response listing "all . . . [daycare] violations" logged

by the Department from mid-2009 to mid-2016 — which would, of course, include many by Safari.  Doc. 327-6 at 57; *see supra* p. 6.  *Compare also* AT Br. 19 ("over 178,000"), *with* Doc. 327-6 at 57 ("almost" 178,000).  And — as Safari's own experience shows — many of these violations prompted enforcement action.  *See, e.g.*, Doc. 327-3 at 162-164 (ordering immediate closure of non-Safari daycare).

In sum, plaintiffs' cursory briefing elides the host of fact-specific considerations that rationally explain defendants' conduct.  Plaintiffs thus have not met their "burden to eliminate any reasonably conceivable state of facts that could provide a rational basis" for any differential treatment, *Black Earth*, 834 F.3d at 851 (cleaned up), and their class-of-one claims therefore fail on the merits.

## C. Defendants are entitled to qualified immunity from plaintiffs' equal protection claims.

Alternatively, this court can affirm on the ground that defendants are entitled to qualified immunity.  *See W. Ill. Corr. Ctr.*, 89 F.4th at 595 (court may affirm on any basis supported by record).  Qualified immunity "shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Smith v. Kind*, 140 F.4th 359, 365 (7th Cir. 2025) (cleaned up), *petition for cert. filed*, No. 25-943 (U.S. Feb. 9, 2026); *see Thayer v. Chiczewski*, 705 F.3d 237, 256 (7th Cir. 2012) (officer qualifiedly immune from class-of-one claim).  "Once a defendant raises the defense" — as defendants did here, *see* Doc. 271 at 13-14; Doc. 304 at 11-12 — "it becomes the plaintiff's burden to defeat it." *Kind*, 140 F.4th at 365 (cleaned up).  To do so, plaintiffs "must clear two hurdles," showing first that defendants "violated

[their] constitutional rights" and second "that those rights were clearly established at the time of the violation." *Id.* "For a law to be clearly established, existing precedent must have placed the . . . constitutional question beyond debate." *Id.* at 369 (cleaned up). And it must not merely set out a "general proposition," but instead "squarely govern[ ] the specific facts at issue." *Id.* at 370, 372 (cleaned up).

Plaintiffs cannot clear these hurdles. As discussed, their class-of-one claims fail on the merits, and thus at qualified immunity's first prong. But, even if there were constitutional violations, qualified immunity would still attach for at least three independent reasons.

First, at the time of the purported violations, it was not — and, indeed, it still is not — clearly established that class-of-one claims challenging discretionary administrative licensing decisions are cognizable. *Cf. Reichle v. Howards*, 566 U.S. 658, 664-65 (2012) (qualified immunity where not clearly established that First Amendment prohibited type of action at issue). The Supreme Court held in *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 603, 605 (2008), that class-of-one claims cannot arise "in the public employment context," "which by [its] nature involve[s] discretionary decisionmaking based on a vast array of subjective, individualized assessments." In 2014, this court expressly left open the question whether *Engquist*'s reasoning prohibits claims related to discretionary administrative licensing decisions. *See Fares Pawn*, 755 F.3d at 848-49 (pawnbroker license); *cf. Love v. Vanihel*, 73 F.4th 439, 454 (7th Cir 2023) ("inherently discretionary" imposition of prison disciplinary sanctions "does not raise equal protection

40

arbitrariness concerns").[11]  Plaintiffs' claims turn on such "discretionary decisionmaking," challenging, for example, defendants' "individualized assessments" of how best to structure investigations. *Engquist*, 553 U.S. at 603; *see, e.g.*, AT Br. 24-25 (criticizing selection of interview subjects). Because it was not "beyond debate" at the relevant times that such claims are actionable, defendants are qualifiedly immune. *Kind*, 140 F.4th at 369 (cleaned up).

Second, because it similarly remains an open question in this circuit whether a class-of-one plaintiff must show "that [the defendant] acted with some kind of bad motive not grounded in [her] public duties," *Fares Pawn*, 755 F.3d at 845, it was (and is) not clearly established that defendants could violate plaintiffs' rights without such a motive, *cf. Reichle*, 566 U.S. at 664-65. As discussed, *supra* pp. 27-34, plaintiffs cannot show that defendants acted out of illegitimate animus.

Third, plaintiffs have not identified any "existing precedent [that] squarely governs the specific facts at issue" here. *Kind*, 140 F.4th at 370 (cleaned up). For example, even if plaintiffs were correct that Riedl could not rationally take into consideration Safari's history of noncompliance, the season, and other playground conditions in setting a deadline to install new mulch at Safari East Dundee, *see supra* p. 37, they have cited no factually similar decision that would have "put [Riedl] on

---

[11]  *Brunson v. Murray*, 843 F.3d 698, 705-08 (7th Cir 2016), held that a class-of-one claim related to the renewal of a liquor license survived summary judgment. But this court emphasized that the relevant defendant "had no discretion to delay the *pro forma* renewal" at issue. *Id.* at 708. At minimum, since this court did not decide *Brunson* until December 2016, it cannot overcome defendants' qualified-immunity defense with respect to earlier conduct.

notice" of that fact, *Kind*, 140 F.4th at 369.  Plaintiffs thus have not met their burden under the "fact intensive [qualified-immunity] inquiry." *Id.* at 371.  For this reason, too, the district court properly granted summary judgment to defendants on the class-of-one claims.

## III.    The district court properly granted summary judgment on plaintiffs' First Amendment claims.

To prevail on their First Amendment retaliation claims, plaintiffs "must show (1) [they] engaged in a protected First Amendment activity; (2) [they] suffered a deprivation that would likely deter First Amendment activity in the future; and (3) causation." *FKFJ*, 11 F.4th at 585 (cleaned up).  Plaintiffs cannot do so, for the same reasons as with their class-of-one claims:  they have waived their arguments, and, regardless, those arguments fail on the merits and cannot overcome defendants' qualified-immunity defense.

### A.    Plaintiffs have waived their First Amendment arguments in multiple independent ways.

Several of the waiver problems that undermined plaintiffs' class-of-one claims also undercut their First Amendment arguments.

To begin, plaintiffs waived almost all their appellate arguments by failing to raise them at summary judgment.  In evaluating First Amendment retaliation claims, this court has refused to consider both purportedly retaliatory actions and supporting evidence not presented to the district court.  *Whitfield v. Spiller*, 76 F.4th 698, 706 (7th Cir. 2023) (retaliatory action); *Diadenko v. Folino*, 741 F.3d 751, 756-57 (7th Cir. 2013) (evidence); *see also Williams*, 724 F.3d at 961 (argument not raised in district court is waived).  Plaintiffs' summary judgment briefing discussed only three

purportedly retaliatory actions: "a chronology being compiled for all Safari locations," "Morris being assigned Safari as her project," and an email from Alexander to another Department employee stating that the agency might eventually need to take enforcement action against daycares that refused access to licensing representatives. Doc. 288 at 11-12. They cited minimal evidence in support of each theory. *See id.* Even assuming that this cursory briefing preserved those three arguments, plaintiffs waived the other theories they now raise for the first time on appeal. *See, e.g.*, AT Br. 47 (discussing, for first time, purported "disruptive visit to Safari" "orchestrated" by Morris).

Plaintiffs insist that the district court should have considered "the full evidentiary record presented" in their Rule 56.1 statement. AT Br. 53. But, as in the equal protection context, *supra* p. 21, the district court was not required to search plaintiffs' 385-page Rule 56.1 statement for potentially relevant evidence, *see Friend*, 789 F.3d at 711; *Bordelon*, 233 F.3d at 529; Doc. 290 (Rule 56.1 statement). Further, as that court explained, the Rule 56.1 statement at issue — like plaintiffs' later Rule 56.1 submissions concerning their class-of-one claims, *supra* pp. 18-19 — "f[ell] far short" of complying with the rule's requirements. SA4-7. And nothing in *Horton v. Pobjecky*, 883 F.3d 941, 948 (7th Cir. 2018) — which merely recites the ordinary summary judgment standard — alters the analysis. *Contra* AT Br. 54. Plaintiffs' litigation choices in the district court thus dispense with most of their First Amendment arguments on appeal.

Plaintiffs have independently waived their First Amendment arguments through inadequate appellate briefing. As with their equal protection claims, *supra* pp. 22-23, they rely on conclusory and undeveloped assertions and often fail to link facts to specific defendants. *E.g.*, AT Br. 47 (attributing individuals' actions to "[d]efendants" generally); *see Paschall*, 28 F.4th at 812 n.3 (undeveloped arguments are waived); *Milchtein*, 42 F.4th at 824 (personal involvement required). Most importantly, they do not meaningfully engage with the district court's reasoning concerning the arguments they raised below. AT Br. 46, 51-52; *see Bradley v. Village of University Park*, 59 F.4th 887, 897 (7th Cir. 2023) (failure to "engage with the district court's reasoning" is waiver). They again almost exclusively cite their Rule 56.1 submissions, which they once more seek to incorporate by reference. *E.g.*, AT Br. 53-54; *see Friend*, 789 F.3d at 712; *Norfleet*, 684 F.3d at 690-91. And these improper citations, too, mask factual inaccuracies in plaintiffs' briefing. *See, e.g.*, AT Br. 44 (combining statements by Morris in two separate email exchanges, Docs. 292-43, 292-44, into a single quote, attributed to "[d]efendants"). Like the district court, this court need not "root through the hundreds of documents and thousands of pages that make up the record here to make [plaintiffs'] case for [them]." *Friend*, 789 F.3d at 711 (cleaned up). It can instead affirm on waiver grounds alone.

**B.      Plaintiffs' First Amendment claims are meritless.**

Plaintiffs' retaliation claims also fail on the merits. Even assuming that plaintiffs engaged in constitutionally protected activity, they can neither show that any of the three purportedly retaliatory actions they identified in the district court

44

"would likely deter First Amendment activity in the future" nor "satisfy the causation element." *FKFJ*, 11 F.4th at 585-86 (cleaned up). And, even if this court were to consider their new arguments, the result would be the same.

The first purportedly retaliatory action that plaintiffs identified in the district court was a March 1, 2013 email from Murray, then the Deputy Director in the Division of Regulation and Monitoring, to several Department staffers, including Morris, the Associate Deputy Director of Licensing, that requested a "chronology" of the Department's interactions with Safari. *See* Doc. 288 at 11. Murray — who had met with Ourth that morning, Doc. 296-52 at 2-3 — wrote: "Please put together the chronology for Safari [daycares] where we have had problems. [Please] include all incidents of police involvement and refusal of access to facilities." Doc. 292-3 at 4. Morris asked whether the chronology should include "Safari facilities in Northern [Illinois]," and Murray responded "YESSSSSSSSSSSSSSSSSSS!!!!!!!!!!!!!!!!!!" *Id.* Later that day, Morris told several subordinates that Murray was "especially interested in a count of the violations" over time, and that Murray hoped the project would help resolve "the difficulties [the Department had] had historically with the centers and open up a better working relationship." *Id.* at 3. In an email to Ourth, Murray explained that she had "ask[ed] staff to review [Safari's] most frequent violations" to help develop tailored trainings for Safari staff, as "discussed at [their] meeting [that] morning." Doc. 296-52 at 2; *accord* Doc. 292-4 at 2 (in a March 5, 2013 email to a Department employee, Murray wrote that she would "determine which violations [Safari had] most frequently and begin with those for the training"). This evidence,

45

at most, bears on plaintiffs' claim against Murray, who requested the chronology; it does not help their claims against the other 22 defendants. *See Milchtein*, 42 F.4th at 824. But even with respect to Murray, plaintiffs' theory does not hold water.

To start, plaintiffs cannot show that the chronology request "would likely deter a person of ordinary firmness from continuing to engage in protected activity." *FKFJ*, 11 F.4th at 585 (cleaned up). Nothing in the record suggests that the chronology's compilation had any effect on plaintiffs' licensure, or any other adverse consequences. *Cf. Santana v. Cook Cnty. Bd. of Rev.*, 679 F.3d 614, 622-23 (7th Cir. 2012) (threat to closely scrutinize plaintiff's administrative filings could not support retaliation claim where agency could not feasibly identify those filings and no consequences ensued). For the first time on appeal, plaintiffs imply that the chronology may have played a role in later licensing actions, claiming, without citation, that after it was compiled, "previously uninvolved Safari[ ] centers suddenly became subject to retaliation." AT Br. 51. Plaintiffs have waived this argument twice over — first by not raising it in the district court, *see* Doc. 288 at 11, and second by not citing any supporting evidence in their brief. *See supra* pp. 43-44. And, in any event, it is unpersuasive. Plaintiffs offer no evidence other than timing that the chronology played any role in any future licensing actions, and timing alone does not suffice: the next licensing action that the Department took against Safari — its notice of intent to revoke Safari McHenry's license — did not occur until more than four months later, on July 18, 2013. *See* Doc. 320-4 at 2; *cf. FKFJ*, 11 F.4th at 587 ("A delay of two or three months between any protected activity and adverse action is

46

far from sufficient to raise an inference of retaliation."). "[A]n ordinary person [would] not be deterred" from future First Amendment activity by Murray's request for a chronology. *Santana*, 679 F.3d at 623.

Nor can plaintiffs satisfy the causation requirement. For this element, plaintiffs bear the initial burden of showing that "the protected activity was a motivating or substantial factor in [defendants'] conduct." *Minocqua Brewing Co. v. Hess*, 160 F.4th 849, 855 (7th Cir. 2025). If plaintiffs "make this threshold showing, the burden then shifts to . . . defendants to produce evidence that they would have [taken the challenged action] even in the absence of [plaintiffs'] protected speech." *Id.* "And if [defendants] carry that burden," then "plaintiffs must demonstrate that [defendants'] proffered reasons for [the action] were pretextual and that retaliatory animus was the actual motivation." *Id.*

No reasonable jury could conclude that plaintiffs' speech was a motivating factor in Murray's request for a chronology. Plaintiffs rely entirely on purportedly suspicious timing: they point out that a Safari Streamwood employee called the police on a Department licensing representative on the day of Murray's email, Doc. 292-2 at 4, and suggest that this must have prompted her request. AT Br. 51-52. As the district court observed, however, "[s]uspicious timing alone will rarely be sufficient to create a triable issue." *Manuel v. Nalley*, 966 F.3d 678, 681 (7th Cir. 2020); *see* SA13. This is not the rare case; plaintiffs offer no evidence that Murray even knew of the call to police when making her request. *See Manuel*, 966 F.3d at

47

681.  Murray did not, for example, reference the call in her email.  Doc. 292-3 at 4. Plaintiffs thus cannot meet their initial burden on causation.

Further, even if plaintiffs could clear that hurdle, they cannot — and do not even attempt — to rebut the evidence that Murray would have taken the same action "even in the absence" of any protected activity.  *Minocqua*, 160 F.4th at 855.  As the district court recognized, "Murray's meeting with Safari representatives provides a reasonable explanation for her subsequent request for [a] chronolog[y]."  SA13; *see* AT Br. 51-52 (ignoring this point); *see also Bradley*, 59 F.4th at 897 (waiver).  Murray herself stated as much to Ourth, noting that she sought the information in order to "tailor" the future Safari staff trainings discussed at their meeting to each center's "most frequent violations."  Doc. 296-52 at 2; *accord* Doc. 292-3 at 3; Doc. 292-4 at 2. Because plaintiffs do not show that this nonretaliatory basis for Murray's request was pretextual, *Minocqua*, 160 F.4th at 855, this retaliation theory fails.

Plaintiffs' second retaliation argument also relates only to their claim against Murray.  They rely on an email from Morris to Lamz, a licensing supervisor, on March 5, 2013 — four days after Murray's request for a chronology — in which Morris wrote:  "Apparently [Murray] says she told [Safari leadership that] she is going to 'make them my project.'"  Doc. 292-3 at 2; *see* AT Br. 51-52.  This theory fails for much the same reasons as the first.

No reasonable jury could find that Murray's decision to "make [Safari] Morris's project," Doc. 292-3 at 2, "would likely deter a person of ordinary firmness from continuing to engage in protected activity," *FKFJ*, 11 F.4th at 585 (cleaned up).

Plaintiffs have never developed, either in the district court or on appeal, any argument as to what "project" meant in this context. *See* AT Br. 51; Doc. 288 at 11. They do not describe any change in Morris's responsibilities or in Safari's interactions with the Department. Nor is it self-evident that becoming Morris's "project" was a negative development. Murray contemporaneously expressed a desire to develop improved, tailored trainings, Doc. 296-52 at 2, and Morris wrote that Murray hoped to "open up a better working relationship" with Safari, Doc. 292-3 at 3. And plaintiffs' attempt to fill the gap by asserting that several Safari centers experienced licensing actions "[w]hile [the company] was designated as Morris's project," AT Br. 51, fails for the same reasons discussed with respect to their first theory. Even setting aside the fact that plaintiffs provide no evidence that Safari remained Morris's project indefinitely, the first licensing action after Murray's decision did not occur for months, *supra* pp. 46-47, and plaintiffs offer no evidence that Morris played any role in it — and, in particular, any special role arising from Safari's status as her project. Plaintiffs cannot establish that Murray's designation of Safari as Morris's project "would likely deter future First Amendment activity." *FKFJ*, 11 F.4th at 585.

Plaintiffs also cannot satisfy the causation requirement. They hint at two different theories, AT Br. 51-52; neither is persuasive. First, they reprise their suspicious-timing theory related to the March 1, 2013 call to the police. *Id.* That argument — which plaintiffs did not raise in the district court with respect to Morris's project, *see* Doc. 288 at 11; *Williams*, 724 F.3d at 961 — fails for the same

49

reasons discussed above, *supra* pp. 47-48. Second, plaintiffs highlight that, in a separate email to a nondefendant Department employee on March 5, 2013, Murray stated that Safari "usually call[s] the legislator for whichever district the facility is in." Doc. 292-4 at 2. As the district court observed, the fact that Murray happened to send this email on the same day that Morris wrote to Lamz about her new project "is not enough to prove [a] retaliatory motive." SA13. "It does not even establish that [p]laintiffs reached out to a legislator," let alone that any outreach had anything to do with Murray's delegation to Morris. *Id.* Plaintiffs offer no response to this observation. *See* AT Br. 51-52; *see also Bradley*, 59 F.4th at 897. This second retaliation theory also does not create a triable issue.

Plaintiffs' third retaliation theory — to which they devote just a single sentence on appeal, AT Br. 46 — concerns a March 27, 2012 email from Alexander, a regional licensing administrator, to another Department employee: "Are you taking enforcement action on [the Safari] center in Cook [that] refused access to the licensing rep[resentative] and then called the police? . . . Seems like the pattern across the state and through time[;] we are going to have to do enforcement at some[ ]time." Doc. 293-27 at 2. Although the email does not specify, plaintiffs asserted in the district court that the incident Alexander described took place nearly two years earlier, in July 2010, when staff at Safari Mount Prospect called the police on Washington-Gurley. *See* Doc. 290 at 51-55; Doc. 293-21 at 3.

This statement, relevant only to plaintiffs' claim against Alexander, does not warrant a trial. Plaintiffs do not explain how an internal message asking about a

coworker's plans and suggesting that enforcement may be necessary at some indefinite future point could "likely deter future First Amendment activity," especially given that they make no effort to connect the message to any eventual enforcement action. *Santana*, 679 F.3d at 622 (no objective deterrence where agency threatened closer scrutiny but regulatory "outcomes" did not change). Nor do they address the district court's conclusion that they could not meet their initial burden on causation, since "[a] lapse of two years between protected speech and adverse action is too long to show retaliatory motive." SA14; *see Bradley*, 59 F.4th at 897. Further, even if they could meet that burden, there is ample evidence that Alexander "would have [taken the challenged action] even in the absence of [their] protected speech." *Minocqua*, 160 F.4th at 855. Alexander commented that enforcement might eventually be necessary to address a "pattern" of "refus[ing] access" to licensing representatives, including by "call[ing] the police." Doc. 293-27 at 2. That practice violated multiple statutes and regulations guaranteeing Department representatives access to licensed facilities. *See* 225 ILCS 10/5(g) (authorizing unannounced visits during operating hours); *id.* § 10/8(4)-(6) (Department may take licensing action where daycare "refuse[s] to submit to . . . investigation" or "to admit authorized [Department] representatives"); 89 Ill. Admin. Code § 407.80(c) (licensing representatives "shall have access" to records). "Any reasonable [regulatory] body would [take enforcement action] under those circumstances." *Minocqua*, 160 F.4th at 856 (enforcement in response to permittee's "public[ ]" "declar[ation]" that it would violate ordinance was not retaliatory). This theory, too, falls short.

Waiver aside, plaintiffs' new arguments on appeal fail for several reasons.

To start, many of the actions plaintiffs discuss would not "deter a person of ordinary firmness from continuing to engage in protected activity." *FKFJ*, 11 F.4th at 585 (cleaned up). Plaintiffs do not explain, for example, how the presence of "enforcement-related attachments" — apparently, from their titles, summary statistics about past enforcement actions — in an internal email thread, attached to a message sent by a nondefendant, could inhibit free expression. AT Br. 46; *see* Doc. 292-39 at 2. And several of the events they describe worked to their benefit. *See, e.g.*, AT Br. 46 ("reassign[ment]" of Department employee disliked by plaintiffs).

Other arguments stumble at the causation requirement. Plaintiffs do not attempt to connect many of their grievances to any purported First Amendment activity. *See, e.g.*, *id.* at 47-48. Instead, citing two Title VII cases, they contend that "[a]mbiguous statements of animus" suffice to "defeat summary judgment." *Id.* at 46. But, in the First Amendment retaliation context, generalized "ill-will" or "animus" are not enough; plaintiffs must show that any "animus is based on . . . protected activity and that [defendants] acted in retaliation based on that animus." *FKFJ*, 11 F.4th at 586.

And even where plaintiffs do try to link purportedly adverse events to protected activity, those attempts do not withstand scrutiny — as, for instance, with their contention that a jury could infer retaliatory intent from the "timing" of some (unspecified) defendants' purported decisions to delay or deny license renewals "three years" after plaintiffs engaged in protected activity. AT Br. 49; *see FKFJ*, 11

F.4th at 587 ("delay of two or three months" is "far" too long to infer retaliation).[12]

Similarly unavailing is plaintiffs' argument based on Morris's purportedly "contact[ing a funding source] to cut off [Safari Mount Prospect's] licensing subsidy" on December 18, 2014, one day after "Ourth called the police" on Department staff. AT Br. 52-53 (cleaned up); *see* Doc. 295-61 at 4-5.[13] Even accepting plaintiffs' characterization of the facts and assuming that this timing could raise an inference of retaliatory motive, there is strong evidence that Morris would have acted regardless of Ourth's call to the police: an ALJ had upheld the Department's refusal to renew the center's license, leaving it unable to operate — and thus presumably ineligible for a "licensing subsidy" — after December 17, 2014. Doc. 327-3 at 218-19. Plaintiffs identify no evidence suggesting that this reason was pretextual.

In short, even if this court were to consider plaintiffs' unpreserved arguments, none would undermine the district court's grant of summary judgment.

C. **Defendants are entitled to qualified immunity from plaintiffs' First Amendment claims.**

Even if plaintiffs had raised a triable issue on the merits of their First Amendment claims, those claims would run headlong into defendants' qualified-

---

[12] Plaintiffs' reliance on *Baines v. Walgreen Co.*, 863 F.3d 656, 666 & n.3 (7th Cir. 2017), is misplaced: the court there explained that, although a long delay does not, standing alone, "undermine a causal connection that is other-wise supported by sufficient circumstantial evidence," it precludes any inference based on "suspicious timing." *Accord Malin v. Hospira, Inc.*, 762 F.3d 552, 560 (7th Cir. 2014). *Contra* AT Br. 49.

[13] In fact, the relevant exhibit does not state that Morris directed the funding cutoff — only that the funder had "cut off [the] licensing subsidy." Doc. 295-61 at 5.

immunity defense.  *See supra* pp. 39-40 (discussing standard).  As in the class-of-one

context, plaintiffs have not identified any "existing precedent [that] squarely governs

the specific facts at issue" here and "place[s] the . . . constitutional question beyond

debate."  *Kind*, 140 F.4th at 369-70 (cleaned up).  For example, they cite no decision

that would have "put [Murray] on notice," *id.* at 369, that her request for a

chronology or designation of Safari as Morris's project "would likely deter future

First Amendment activity," and thus could violate the Constitution, *FKFJ*, 11 F.4th

at 585.  Nor do they point to any precedent recognizing a retaliation claim based on

an intra-agency email, like Alexander's, speculating about possible future

enforcement action based on specific violations.  Because plaintiffs have not

established that the relevant law was "clearly established," defendants are entitled to

qualified immunity.  *Kind*, 140 F.4th at 369.

## IV.    The district court properly granted summary judgment on plaintiffs' conspiracy claims.

Plaintiffs' section 1985(3) claims are also meritless.  That statute "provides a

cause of action for persons who are victims of a conspiracy to deprive them of the

'equal protection of the laws' or 'equal privileges and immunities under the laws.'"

*Milchtein*, 42 F.4th at 827 (quoting 42 U.S.C. § 1985(3)).  Plaintiffs' briefing on these

claims suffers from the same waiver problems as their other arguments.  *See, e.g.*, AT

Br. 56 (citing more than 450 pages of Rule 56.1 filings in support of conclusory

assertion that "record reflects" conspiracy).  But even setting that issue aside, the

claims fail for at least two independent reasons.

54

First, a successful section 1985(3) claim requires "a viable claim for an underlying constitutional or federal statutory violation." *Gilbank v. Wood Cnty. Dep't of Hum. Servs.*, 111 F.4th 754, 789 (7th Cir. 2024). Plaintiffs have no such "viable claim." *Id.*

Second, "'the conspiracy must be motivated by racial, or other class-based discriminatory animus,'" and thus cannot be premised on a class-of-one equal protection violation. *Thorncreek Apartments III, LLC v. Mick*, 886 F.3d 626, 634 (7th Cir. 2018) (quoting *Gomez*, 550 F.3d at 617). Because plaintiffs invoke only a class-of-one theory and neither alleged nor presented any evidence of class-based animus, *see* AT Br. 57-58 (conceding this fact), they cannot succeed on their section 1985(3) claims.

Plaintiffs' response — that courts have recognized class-of-one claims, *id.* at 56-57 — misses the point. No one disputes that class-of-one claims are actionable under section 1983. But this court has held, as a matter of statutory interpretation, that section 1985(3) does not extend to conspiracies premised on such claims. *See Thorncreek*, 886 F.3d at 634. None of the decisions plaintiffs cite — all of which involved section 1983 claims, *see* AT Br. 57 — contradict that conclusion. The district court thus properly granted summary judgment to defendants on plaintiffs' conspiracy claims.

# CONCLUSION

For these reasons, defendants-appellees request that this court affirm the district court's judgment.

Respectfully submitted,

**KWAME RAOUL**
Attorney General
State of Illinois

/s/ R. Sam Horan
**R. SAM HORAN**
Assistant Attorney General
115 South LaSalle Street
Chicago, Illinois 60603
(312) 793-0797 (office)
(312) 405-5354 (cell)
Richard.Horan@ilag.gov

**JANE ELINOR NOTZ**
Solicitor General

115 South LaSalle Street
Chicago, Illinois 60603
(312) 814-3000

Attorneys for Defendants-Appellees

March 23, 2026

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS**

I hereby certify that this brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and Circuit Rule 32 and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in proportionally spaced typeface using Microsoft Word for Microsoft 365 MSO, in 12-point Century Schoolbook BT font, and complies with Federal Rule of Appellate Procedure 32(a)(7)(B) and Circuit Rule 32(c) because it contains 13,996 words, excluding the parts exempted by Federal Rule of Appellate Procedure 32(f).

/s/ R. Sam Horan
R. SAM HORAN
Assistant Attorney General
115 South LaSalle Street
Chicago, Illinois 60603
(312) 793-0797 (office)
(312) 405-5354 (cell)
Richard.Horan@ilag.gov

# CERTIFICATE OF FILING AND SERVICE

I certify that on March 23, 2026, I electronically filed the foregoing Brief of Defendants-Appellees with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system.

I further certify that the other participant in this appeal, named below, is a CM/ECF user and will be served via the CM/ECF system.

Joseph Dusek
joe@duseklawoffice.com

/s/ R. Sam Horan
R. SAM HORAN
Assistant Attorney General
115 South LaSalle Street
Chicago, Illinois 60603
(312) 793-0797 (office)
(312) 405-5354 (cell)
Richard.Horan@ilag.gov
